Original

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

**FILED**

# UNITED STATES DISTRICT COURT

for the

Northern District of California ☐

JUL 06 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

OAKLAND_ Division

**C22-03955**

DENNIS BRUCE ALLUMS

Case No. _____

*(to be filled in by the Clerk's Office)*

KAW

_____

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

CITY OF OAKLAND
OAKLAND POLICE DEPARTMENT
INVESTIGATIONS OFFICER CAMERON doe

_____

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

## COMPLAINT AND REQUEST FOR INJUNCTION

I.   **The Parties to This Complaint**

A.   **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | DENNIS BRUCE ALLUMS |
| Street Address | 1831 SOLANO AVE |
| City and County | BERKELEY - ALAMEDA COUNTY |
| State and Zip Code | CALIFORNIA 94707 |
| Telephone Number | 510-962-9243 |
| E-mail Address | lawsuit19@gmail.com |

B.   **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

Defendant No. 1

| | |
|---|---|
| Name | CITY OF OAKLAND |
| Job or Title *(if known)* | PUBLIC ENTITY |
| Street Address | 1 Frank H. Ogawa Plaza |
| City and County | OAKLAND,   ALAMEDA COUNTY |
| State and Zip Code | California 94607 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | OAKLAND POLICE DEPARTMENT |
| Job or Title *(if known)* | PUBLIC ENTITY |
| Street Address | 455 7th St |
| City and County | OAKLAND,   ALAMEDA COUNTY |
| State and Zip Code | CALIFORNIA  94607 |
| Telephone Number | 510-238-3455 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | INVESTIGATIONS OFFICER CAMERON *Jou* |
| Job or Title *(if known)* | INVESTIGATIONS OFFICER FOR O.P.D. |
| Street Address | 455 7th St |
| City and County | OAKLAND,   ALAMEDA COUNTY |
| State and Zip Code | CALIFORNIA, 94607 |
| Telephone Number | 510-238-3455 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | DOES 1-99 |
| Job or Title *(if known)* | UNKNOWN |
| Street Address | 455 7th St |
| City and County | OAKLAND,   ALAMEDA COUNTY |
| State and Zip Code | CALIFORNIA, 94607 |
| Telephone Number | 510-238-3455 |
| E-mail Address *(if known)* | |

Page 2 of 6

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
42 U.S. Code § 1983 - Civil action for deprivation of rights
18 U.S. Code § 241 - Conspiracy against rights

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

        The plaintiff, *(name)* DENNIS BRUCE ALLUMS          , is a citizen of the

        State of *(name)* CALIFORNIA          .

    b.    If the plaintiff is a corporation

        The plaintiff, *(name)* _____ , is incorporated

        under the laws of the State of *(name)* _____ ,

        and has its principal place of business in the State of *(name)*

        _____ .

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

        The defendant, *(name)* _____ , is a citizen of

        the State of *(name)* _____ . Or is a citizen of

        *(foreign nation)* _____ .

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

b.    If the defendant is a corporation

The defendant, *(name)* CITY OF OAKLAND                          , is incorporated under

the laws of the State of *(name)* CALIFORNIA                          , and has its

principal place of business in the State of *(name)* CALIFORNIA                          .

Or is incorporated under the laws of *(foreign nation)*                          ,

and has its principal place of business in *(name)*                          .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:
SEE ATTACHMENT AC 1

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?
See Attachment C1

B.    What date and approximate time did the events giving rise to your claim(s) occur?
See Attachment c 1

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

C.     What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*
See Attahcment C1

## IV.    Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.
See Attachemnt c 2

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.
Plaintiff request the following Immediate Injunction to do the following:
1) Release complete polcie report to the plaintiff/victim as he Is the Main and only victim who suspect attmepted to stab and he attmepted to stab him several times.
2) Add plaintiff to main police report and not supplement as he is the main victim. victims of attempted murder should not be on a supplemental report.
3) Remove designation of suspect as a "child" he clearly is not nor did anyone at the library think he was.
4) Give plaintiff any and all evidence of the case inclkuding video inwhich the opakland polcie department refuse to give Oakland llbrary head permission to release
5) Release complete police report to the public.

See Attachment C3 For Non Immeidate Relief

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    06/29/2022

Signature of Plaintiff

Printed Name of Plaintiff    DENNIS BRUCE ALLUMS

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

WHAT HAPPENED:

On January 24th, 2022, at The Oakland Public Library, at approximately 3 pm, a crazed mad-man began making homophobic remarks about a man he believed to be gay as well as a librarian he believed to be black, calling her a "fat black bitch". He then began arguing with the public and challenging every one of them until a black male, approximately 75 years of age stood up to him as the suspect pulled out a knife. The black male pulled up a chair and held it to the suspect and backed him towards the entrance door of the library. As he and a small crowd backed the suspect to door leaving a small space between the outside door and the entrance to the library, the librarians frantically called nine - one – one (911). Unfortunately, it eventually became clear that the OPD could not or would not come as at least 15 minutes had passed and they had not arrived. Suddenly, the security sat down as the librarian appeared to tell them to stand down. As the small crowd left, and the security officers were now sitting in their chairs, there was just one elderly man with a chair alone to keep the man with the knife out. Initially, the plaintiff tried to calm the person down by going to get his jacket and then giving it to him, but when that did not work, he knew he needed to stand beside the old man, as security was no longer there to protect him. The suspect kept fake-rushing in, as the plaintiff kept telling the suspect, if he rushed this man, he would have to deal with him, also.

At a point, the chair, that the 70-year-old black man was repeatedly slamming on the floor to intimidate the suspect broke, and when the suspect picked up the left-over parts of the chair and smiled, the plaintiff knew he had to act quickly, thinking fast the plaintiff mumbled to the guards and librarians to lock the door behind him as he quickly went outside around him forcing him to come out. As soon as he was outside, the suspect as expected, also came outside and was face to face with a very dangerous man.

The plaintiff believing the suspect should not have a grudge against him attempted to calm him down. It was risky for he was only in an exercise short and a thin t-shirt. He began to try to talk reason to him and suddenly, his eyes lit up, like he knew him from some past confrontation and began for the first time, lunging and trying to stab someone, unfortunately, it was the plaintiff.
He was shocked as he quickly retreated to the library entrance door, but it was locked, and it was clear that they weren't going to unlock it as they seemed to wear a smile which implied "good luck with that". As he then tried to slash him again, he jumped down some stairs backwards, and when the suspect closely followed, he jumped down some more steps as his clothes were cut open.
 Since the plaintiff had bad knees due to torn ligaments from another similar incident, he could not outrun him, so he stopped and was backed to the ledge of a cliff. The suspect smiled and then slashed at him again, forcing the plaintiff to jump off the 5 ft ledge to safety injuring both of his feet (at the time he believed they were broken) and reinjuring his knee.

Injured and slightly limping, he heard and saw a police SUV swerving and coming down the street. To assist the situation, the plaintiff stood in the middle of the street and flagged down the police officer to the exact spot. The elderly man shook in fear although he did not attempt to stab him, he only attempted to stab the plaintiff.

I waved the officer out of the car and directed him to the suspect who had now cornered the man in the red hat whom he threatened with a knife but did not attempt to stab him. I pointed at the suspect and the victim to make sure no innocent individual was killed. It was a very volatile situation.

The officer drew his gun and told him to freeze as the suspect bolted back to the library entrance but since the door was locked and the officer was threatening to shoot him, he dropped the knife, and as a half dozen other officers arrived with guns drawn several asking where's the stab victim, He was confused at first but he eventually realized that the police had finally come when someone had said the plaintiff was stabbed. The police and the suspect struggled for 20 minutes to subdue the crazed man bringing more evidence to my belief that it would have been a bad idea to fight him alone especially since he had a knife.

Meanwhile, officers were interviewing others and when an officer with his long gun drawn told the plaintiff in an angry tone to leave, the plaintiff started to argue but looked at the assault rifle and then simply turned and left and went back inside the library to his typewriter knowing that the old man and the librarians were alright. One librarian ran up to him and could not believe he was not stabbed and bleeding and indicated that she had reported that he, the plaintiff, was being stabbed, but he was not.

He waited patiently for the police to interview him; they never did. As he left, the head of security came out to thank him as did another librarian. He smiled and said, "all in days' work" and left.

The next day he called the Oakland Police Department to give his story and file a police report, but an officer said they were too busy that day. That it would be better to give the report the next day. Feeling put off, he called around and found out that an officer named Colin Cameron (Not Camera as previously thought) was overseeing the case, and he would be the one to file the report. The plaintiff left a message for him but 24 hours later, strangely he had not called back. The plaintiff then contacted the receptionist at Investigations contacted and told her his story and that he was angry that the most important person in a serious assault was not being contacted. He was very suspicious for the most important facts only he knew. He assumed the most important facts were being left out and as he would soon learn, they were.

It didn't make sense, but he felt like they were avoiding his information and denying him the right to file a police report. There he was, injured and worried that the guy who tried to stab and kill him multiple times may be released and would recognize him, possibly from his years on the Berkeley Crime Watch, 2008 to 2012. He now needed to protect himself in case he ever saw him again, as criminals were being let out those days; right and left. He did not know he was already let out!!!!

To his surprise, the receptionist at investigations was able to get officer Cameron to call him right back, **but to his utter surprise, officer Cameron laughed at his request of filing a police report and stated, "Oh, we got enough" "We even got the knife" then finally as the plaintiff kept insisting, he laughed and said, "what do you want to do, sue him?"** The plaintiff went ballistic for obvious reasons, for what he was saying was consistent with what women who had been raped, learning of an arrest, would come forth to say "he raped me too!" only to hear detectives say "we got enough to convict". If a man breaks into a dorm, inappropriately touches several women, but sexually assaults another, just because she comes forth the next day, does not mean she is insignificant and even more, she doesn't have a right to the police report because her attacker is crazy, and the state must protect crazy rapist/criminals.

Eventually, it got worst as it was clear that Officer Cameron did not have all the facts and was ready to go to court with so many holes in the case, he didn't even know that the suspect had tried to stab the plaintiff. What type of police work is that? Even worse, he did not care! All he had were jokes. I filed a complaint against officer Cameron and a Sergeant Desean, called the plaintiff to investigate, when the plaintiff complained about not being able to receive a full copy of the police report, officer Desean stated that it was just temporary and the impediment, due to the suspect being designated as a child, mentally, was just temporarily. The designation still exists. This begs the question, is every very intelligent (as the suspect clearly was) African American suspect who acts crazy during the commission of a crime also designated as a child and equally protected as was and is this suspect? Clearly the suspect knew the difference between right and wrong because the only person he decided to stab was the plaintiff, four times. This was clearly a judgement based on complex information. This suspect clearly did not and does not have the mentality of a child.

In regard to the video of the assault, the plaintiff requested a copy of the video from the Oakland Public Library. The request was denied stating he had to go to the Oakland Police department, the plaintiff then requested a copy of the video from the Oakland Police department. He called the Oakland Police department and they said there was no video. Plaintiff then contacted the Oakland Public Library director again, and again, she said there was but it was the Oakland Police department's property. It went back and forth until the plaintiff eventually gave up. All victims have the right to any evidence, especially video, of their assault unless given a specific legal reason why not, they gave none.

ALSO,

EVERY VICTIM OF A VIOLENT CRIME HAS A RIGHT TO FILE A POLICE REPORT – NOT THE FIRST THREE OR FIRST FIVE as officer Cameron seemed to suggest. That's when it hit him. He was an African American, and he was the hero and not the criminal, thus the noninterest in him being on the police report. It begs the question; would he have given him more attention if he had robbed or killed someone? Of course, he would have. Over the past 30 years, the plaintiff has stopped hundreds of crimes and not once was it ever reported that the hero was black, in fact when the Federal Bureau of Investigation discovered his heroic acts (Hundreds of women and children saved

from assaults), his heroic work was labelled as suspicious and he was placed under surveillance for two decades despite committing no crime or having a criminal record by any police department ever, eventually resulting in his current lawsuit: Allums vs FBI/DOJ.

The police and the media run from people like the plaintiff who stops crimes rather than committing them. It's just bad copy as officer Cameron clearly exhibited. We, therefore, file this suit.

**STATEMENT OF CLAIM:**

The Oakland Police Department violated the plaintiffs' constitution when they:
1) (Officer Cameron) Initially refused to file a police report about what the plaintiff believed was an attempt to murder him.
2) Refused to place the main and only victim who was stabbed, and the reason their guns were drawn in response to the initial police report asserting he was not a major or essential fact and instead he can only be found in subsection 6.
3) Even as recently as January 20th, 2022, still refuse to recognize the plaintiff as an attempted murder victim and give him access to a full police report of the incident
4) As recently as June 20th, 2022, refuse to grant the Oakland Public Library permission to release the video of the event. The video in which the plaintiff is a victim will soon it is not already) be deleted, this would clearly make the plaintiffs' case against the suspect weak and the emotional pain and anger will be immense.
5) Refused to give him a copy of the police report100% due to the false classification of him as not an essential victim (this action was recorded in the records).
6) Let the suspect follow him several times although since he can't get his name, he cannot defend himself. This then resulted in the plaintiff sleeping with a gun taped to his hand for months.

**IRREPARABLE INJURY:**

Monetary damages cannot be measured for the callous behavior of how the Oakland Police Department not only treated a victim but a hero who single-handedly protected an elderly man as security stood down for whatever reasons they had.
Being followed by a man that the police believe is so mad and insane that they won't allow his name to be public, yet they will allow the victim to be followed, harassed and

possibly killed. This is an unimaginable callousness, and we leave it up to the court to decide the level of damage.

**RELIEF:**

Immediate:

Plaintiff requests the following immediate injunction to do the following:
1) Release a complete police report to the plaintiff/victim as he is the Main and only victim whom the suspect attempted to stab and he attempted to stab him several times.
2) Add the plaintiff to the main police report and not supplement, as he is the main victim. victims of attempted murder should not be on a supplemental report.
 3) Remove the designation of the suspect as a "child" he clearly is not, nor did anyone at the library think he was.
4) Give the plaintiff all evidence of the case, including a video in which the Oakland police department refuses to give the Oakland library head permission to release
5) Release a complete police report to the public.

Other/Additional:

1) Ascertain if officer Cameron was attempting to help federal agents by denying the plaintiff the right to file a police report.
2) Require Oakland Police department to change policy and always allow victims to have a police report.
3) Require Oakland police department to always allow victims of major crimes to access video.
4) If the video is no longer accessible or destroyed due to the Oakland police department's inactivity, we leave it to the court's discretion to determine the penalty for such a heinous, irresponsible, yet purposeful act.

**Law:**

**PLAINITIFF'S VIOLATE MARCY'S LAW AND THE STATE OF CALIUFORNIA VICTIMS BILL OF RIGHTS:**

Marsy's Law significantly expands the rights of victims in California. Under Marsy's Law, the California Constitution article I, § 28, section (b) now provides victims with the following enumerated rights:

1. **To be treated with fairness and respect for his or her privacy and dignity, and to be free from intimidation, harassment, and abuse, throughout the criminal or juvenile justice process.**
2. **To be reasonably protected from the defendant and persons acting on behalf of the defendant.**
3. **To have the safety of the victim and the victim's family considered in fixing the amount of bail and release conditions for the defendant.**
4. To prevent the disclosure of confidential information or records to the defendant, the defendant's attorney, or any other person acting on behalf of the defendant, which could be used to locate or harass the victim or the victim's family or which disclose confidential communications made in the course of medical or counseling treatment, or which are otherwise privileged or confidential by law.
5. To refuse an interview, deposition, or discovery request by the defendant, the defendant's attorney, or any other person acting on behalf of the defendant, and to set reasonable conditions on the conduct of any such interview to which the victim consents.

6. **To reasonable notice of and to reasonably confer with the prosecuting agency, upon request, regarding, the arrest of the defendant if known by the prosecutor, the charges filed, the determination whether to extradite the defendant, and, upon request, to be notified of and informed before any pretrial disposition of the case.**

7. **To reasonable notice of all public proceedings, including delinquency proceedings, upon request, at which the defendant and the prosecutor are entitled to be present and of all parole or other post-conviction release proceedings, and to be present at all such proceedings.**

8. To be heard, **upon request**, at any proceeding, including any delinquency proceeding, involving a post-arrest release decision, plea, sentencing, post-conviction release decision, or any proceeding in which a right of the victim is at issue.

9. To a speedy trial and a prompt and final conclusion of the case and any related post-judgment proceedings.

10. To provide information to a probation department official conducting a pre-sentence investigation concerning the impact of the offense on the victim and the victim's family and any sentencing recommendations before the sentencing of the defendant.

11. To receive, **upon request**, the pre-sentence report when available to the defendant, except for those portions made confidential by law.

12. To be informed, **upon request**, of the conviction, sentence, place and time of incarceration, or other disposition of the defendant, the scheduled release date of the defendant, and the release of or the escape by the defendant from custody.

13. **To restitution.**
    A. **It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer.**

B. Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss.

C. All monetary payments, monies, and property collected from any person who has been ordered to make restitution shall be first applied to pay the amounts ordered as restitution to the victim.

14. **To the prompt return of property when no longer needed as evidence.**

15. To be informed of all parole procedures, to participate in the parole process, to provide information to the parole authority to be considered before the parole of the offender, and to be notified, **upon request**, of the parole or other release of the offender.

16. **To have the safety of the victim, the victim's family, and the general public** considered before any parole or other post-judgment release decision is made.

17. To be informed of the rights enumerated in paragraphs (1) through (16).

**AND FEDERAL VICTIMS BILL OF RIGHTS:**

## RIGHTS OF VICTIMS

## What Federal Rights Do Crime Victims Have?

Two federal statutes describe the federal Government's responsibilities to crime victims. The Victims' Rights and Restitution Act (VRRA) (34 U.S.C. § 20141) describes the services the federal government is required to provide to victims of federal crime. The Crime Victims' Rights Act (CVRA) (18 U.S.C. § 3771) sets forth the rights that a person has as a crime victim. For purposes of these rights and services, victims are defined in specific ways in the law.

Under the Victims' Rights and Restitution Act (VRRA), 34 U.S.C. § 20141, some of the services victims are entitled to include:

- To be informed of the place where they may receive medical and social services

- To be informed of public and private programs available for counseling, treatment, and other support services
- To receive reasonable protection from a suspected offender and persons acting in concert with or at the behest of the suspected offender
- To know the status of the investigation of the crime, to the extent it is appropriate and will not interfere with the investigation
- To have personal property being held for evidentiary purposes maintained in good condition and returned as soon as it is no longer needed for evidentiary purposes

Under the VRRA, a crime victim is a person who has suffered direct physical, emotional, or pecuniary (financial) harm as a result of a crime. If a crime victim is under 18 years of age, incompetent, incapacitated, or deceased, services should be provided to one of the following representatives of the victim (in order of preference): a spouse, legal guardian, parent, child, sibling, another family member, or another person designated by the court. More than one victim representative can be identified and provided with services depending on the circumstances. Under no circumstances shall a person culpable (responsible) for the crime be treated as a representative of a victim.

## Additionally, under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, victims have the following rights:

- The right to be reasonably protected from the accused
- The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused
- The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding
- The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding
- The reasonable right to confer with the attorney for the government in the case
- The right to full and timely restitution as provided in law
- The right to proceedings free from unreasonable delay
- The right to be treated with fairness and with respect for the victim's dignity and privacy
- The right to be informed in a timely manner of any plea bargain or deferred prosecution agreement
- The right to be informed of the rights under this section and the services described in section 503(c) of the Victims' Rights and Restitution Act of 1990 (34 U.S.C. § 20141(c)) and provided contact information for the Office of the Victims' Rights Ombudsman of the Department of Justice. The Victims' Rights Ombudsman may be contacted at eousa.VictimOmbudsman@usdoj.gov if a victim believes a Department of Justice employee has failed to provide them their rights under the Crime Victims' Rights Act

Under the CVRA, a crime victim is a person who has been directly and proximately harmed (physically, emotionally, or financially) as a result of the commission of a federal offense or an offense in the District of Columbia. In the case of a crime victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardians of the crime victim or the representatives of the crime victim's estate, family members, or any other persons appointed as suitable by the court may assume the crime victim's rights, as long as that person is not a defendant in the crime being investigated or prosecuted. Foreign citizens may be victims in some cases. Businesses, corporations, and non-profit organizations can be eligible victims, and an authorized representative of the entity should be designated for purposes of notification.